And we'll call the next matter, which is Cup versus United Steel Paper and Forestry Rubber. I'm not going to read this whole name, but you know versus Ampco. Mr. Blumenfeld. Thank you, Your Honor. Good morning, Your Honors. Good morning. And may it please the Court, my name is Jeremy Blumenfeld. On behalf of defendants, appellants in this matter, with me at counsel table is Stephanie Reese, also of Morgan Lewis. And with the Court's permission, I'd like to reserve three minutes of my time for rebuttal. Granted. Thank you. Mr. Blumenfeld, before we get to the merits, I cannot help but observing, and if I'm wrong, I ask you please to correct me. It sure looks to me like the company reneged on a promise to retirees here. I think, Your Honor, there's very much a difference of opinion about that question and whether that memorandum of agreement was meant to represent anything about any sort of continuing obligation to provide retiree benefits. What did they have before the MOA? What did these retirees have? Before the memorandum of agreement? Current retirees before the MOA. So people who retired before March of 2015, before January 1 of 2017, were entitled to essentially a benefit program that was similar to the benefits that active employees had in the 2012-13-14 time period. So it changed what they had previously received, replacing it with this monthly stipend, if you will. There was definitely a change effective January 1 of 2017, yes. It's very similar to the changes that have occurred in other circumstances. One good example is the Tackett v. M&G Polymers case involving similar changes to retiree medical benefits that the Supreme Court addressed, although in that case it was the elimination of retiree medical benefits, not just changes to the benefits that were being provided. So you would agree that the MOA, as it stands, is essentially a freestanding agreement? Put aside the CBA. The MOA, as a memorandum of agreement, is in fact an agreement in a contractual sense. I don't agree with that, Your Honor. It is certainly a document that was exchanged back and forth between the parties. Okay. So the import of your response to my question is that these folks have no rights. They have no rights under arbitration, and they then have no rights for breach of contract, assuming that they can't get to arbitration. Well, regardless of whether they would be in arbitration or in court, certainly our position is that the medical benefits that they had were medical benefits that they were provided pursuant to the terms of the plan, and those plan terms could be changed by the company pursuant to the plan terms, and that they don't have any contractual right to ongoing retiree medical benefits, either during the term of the contract or lifetime benefits. So they have no remedy? Well, their remedy would be to pursue, if anything, a breach of contract claim in court, which is the alternative count two and three. We didn't get a chance to litigate the merits of that. I'm sorry. You may have misunderstood. I may have badly stated my question. That was my point, that if they're not receiving the same benefits now that they were receiving before and they can't get to arbitration, then do they have a remedy available, as I am assuming one usually does under an agreement that has been breached? In any event, could we move to jurisdiction because it seems to be a question here, and I'm curious as to what you consider the administrative closure language to mean as it was included in this order of Judge Schwab's. I would say, Your Honor, that the fact that the court administratively closed the matter is irrelevant to the question of whether there was a final judgment or not. Certainly we're not saying that the existence of an administrative closure means that the case is over in and of itself, but if you look at everything else about the case, the case was over. What was left for the court to do here, given the grant of relief on count one and the dismissal without prejudice on counts two and three? The answer is nothing, Your Honor. There was nothing left for the district court to do for the precise reason that it granted the relief on the count, and to use the term count I think is a little bit of a misnomer. It certainly was styled as that way in the complaint, but it's not a separate cause of action for arbitration. And so once the district court compelled arbitration and dismissed the other counts without prejudice, that was the end of the case. And just directing the court to the Roman Haas case was a very similar circumstance in that case, where the court granted summary judgment on a count to compel arbitration, and then the court said that the other counts were deemed moot as a result of the fact that the court compelled arbitration. So what do you make of the language from at least one case within the Third Circuit that administrative closings are not final orders? I point you specifically to Freeman. How would you distinguish Freeman? So Freeman, if I recall correctly, was a case that involved the parties settling in front of the district court judge. And what the judge did in that case was administratively close the matter without ruling on any of the substantive counts in the complaint and saying basically the parties came to me and said they settled the case, I'm going to administratively close it. And the terms of the settlement in that case required them to go through some additional proceedings, but I think that's the main distinction between that case and this one. Here the court did dismiss those substantive counts and did so without prejudice. If I could analogize on the jurisdictional point, if the tables had been reversed and if plaintiffs had filed their two counts and their position was the dispute was not arbitrable and we had come in and said, wait a second, this case is supposed to be arbitrated, once the court granted the motion to compel arbitration and dismissed those other two counts without prejudice, just like it actually did, there would be no doubt that the court had jurisdiction over that dispute. And the standards for granting a motion to compel arbitration are the same standards that govern the Rule 12 analysis or the Rule 56 analysis, whether there is, it's a as a matter of law kind of analysis, and that's this court's decision in the legal helper's case from 2013. So you'd concede that if counts two and three had not been dismissed, then we would lack jurisdiction? If counts two and three had not been dismissed, then I think it would, the court would not have jurisdiction, although I'll point you again to the Roman Haas case where the second count actually wasn't dismissed, but the court said effectively it was rendered moot by the fact that the court compelled arbitration of the dispute. So let me go back to this memorandum of understanding. What is it if it's not a contract? I think we would say, Your Honor, that it is the process that leads to the negotiation and finalization of a collective bargaining agreement. I don't, I certainly don't want to correct Judge Restrepo, but I think he misspoke. Because if I recall, this is not a memorandum of understanding. It's a memorandum of agreement, isn't it? Which makes it a contract, doesn't it? You've called it an agreement. Well, it says that it is a tentative memorandum of agreement. And there no doubt will be a dispute, we would say back in the district court, about whether that agreement is a binding and enforceable contract or not, in the same way that any other contract and any other papers that might be exchanged between the parties. Where does it say tentative? I didn't, I don't, it doesn't say memorandum of tentative agreement. It says memorandum of agreement. No, I think before it says memorandum, I believe the words tentative appear there. Tentative's at the beginning. So you're saying it's not a contract. I thought, I guess I misapprehended your argument. I thought you were going to come in here and argue, as I think you did in the brief, that it is a contract, but it doesn't govern the retiree benefits because, under the collective bargaining agreement, employees are defined in such a way as to not include the retirees who are the complainants here. Well, Your Honor, I was. Is that not the argument? I was prepared to come into court today, Your Honor, to say the merits of the dispute, that is whether the memorandum of agreement is a binding contract and whether it entitles these plaintiffs to the retiree medical benefits they seek, is not an issue before the court and not an issue that we've briefed at all in the context of this appeal. This is just about the question of arbitrability. The collective bargaining agreement is very clear that it only requires arbitration of grievances that relate to that agreement, capital A agreement, which is defined as the collective bargaining agreement itself, nothing else. And was there any incorporation of the MOA into the CBA? So the answer to your question is yes. Certain provisions that are reflected in the memorandum of agreement were copied verbatim into the collective bargaining agreement, but there is no provision in the collective bargaining agreement that says that the memorandum of agreement is actually incorporated into the collective bargaining agreement. And if you look further, and as we explain in our brief, there are other side agreements between the parties that the collective bargaining agreement says explicitly are incorporated into that collective bargaining agreement. For example, tardiness and late shift policies are expressly incorporated into the collective bargaining agreement. The memorandum of agreement is not incorporated by reference into the collective bargaining agreement, and the memorandum of agreement provisions that plaintiffs point to regarding retiree medical benefits weren't copied into the collective bargaining agreement like other parts of the memorandum of agreement that were. You have set out in the CBA a detailed, I think, four-step procedure for invoking arbitration. Is that correct? Correct, Your Honor. And I believe they require an employee to trigger the arbitration process. They do, Your Honor. Can the union itself ever trigger the arbitration process? I believe step one requires that an employee bring the grievance in the first instance. I think that's what the contract requires. The union is able to bring arbitration over a grievance later in the steps, but it requires an employee to initiate that process. Your Honor, the district court relied on Section 19 of the collective bargaining agreement as the basis for compelling arbitration because Section 19, which is reflected in the joint appendix at page 236, refers to a, quote, medical insurance, close quote, plan, and says that the employees covered by this agreement also participate in the following plans, medical insurance. That doesn't incorporate the memorandum of agreement into the collective bargaining agreement and can't be the basis for arbitration for at least two reasons. The first is the medical insurance plan that applies to employees has nothing to do with these retirees. That plan is not the plan that these retirees participated in. It's not the plan that these retirees want to participate in. It's just like saying that some other completely unrelated plan applies to a completely separate and different group of individuals, and that's the second part of the argument. Section 19 says employees participate in the medical insurance plan. It doesn't say anything about what retirees do or do not participate in. So is it your view that this memorandum of agreement, unless it was incorporated into the collective bargaining agreement, it can be changed unilaterally by management, and the people affected really have no remedy? Your Honor, what I would say is that memorandum of agreement, whether that's a binding and effective contract would be for the district court to consider on remand, but certainly it's our position that the retiree medical language that is in that memorandum of agreement does not create any contractual obligations on the company to provide those benefits for any specific duration or for lifetime retirement. Your answer is yes. The terms of this memorandum of agreement can be changed unilaterally. The terms of the tentative memorandum of agreement that were not incorporated into the collective bargaining agreement are not binding contractual obligations. So what's the purpose of this document? I think it's part of the negotiation process for the parties that leads to the collective bargaining agreement, which reflects their actual agreement and understand. So it's only real efficacy in your view is to the extent that portions of it are incorporated into the CBA? Either copied into the CBA verbatim or incorporated into the CBA, but again, that's an issue that the district court didn't consider and that we're not asking you all to consider today, because the question is just about whether that dispute is arbitrable or not, and regardless of whether that is a binding and enforceable contract or not, it clearly does not fall within the grievance and arbitration provision in the collective bargaining agreement. I see that my time is up. If you have any questions. Thank you. We'll have you back in rebuttal. Thank you, sir. Mr. Kilbert. May it please the Court. I'm Nathan Kilbert, Assistant General Counsel for the United Steelworkers Union, arguing today on behalf of the police. I'm joined by my colleague, Hamina Hewing, of the firm Feinstein, Doyle, Payne & Kravitz at counsel table today. I'd like to begin by stating that this Court's 2013 decision in Freeman v. Pittsburgh Glassworks controls the outcome here. This Court lacks jurisdiction to consider this appeal because the district court. I have some familiarity with that opinion. So why does the distinction that was made by your adversary here not apply such that we, in fact, do have appellate jurisdiction? There's a big difference between what happened and what the Court did in Freeman v. Judge Schwab and what the Court did here. Again, Judge Schwab. I would submit, Your Honor, that the operative difference, there really isn't an operative difference. What happened here is the district court ordered that the dispute be arbitrated and ordered the case administratively closed and ordered that the parties complete ADR. And the day following the order appealed from, the district court issued another order laying out further details of the ADR process. The district court was doing here what the court in Freeman called common and laudable, acting as a backstop to the arbitration process. If, in the course of putting together the arbitration process, the parties had encountered a difficulty, we could have gone to the district court to resolve that. In fact, we ended up having some difficulties, which we managed to work out amongst ourselves without having to go to the district court. But the point is that the district court was acting as a backstop. The district court absolutely still had things to do. First, there was this ADR process that was set to occur a month after the order appealed from. And second, the district court was there to act as a backstop to arbitration. The fact that this, the exact nature of the claim is different, I don't think makes a difference to the fact that the judge was there to act as that backstop. Did the ADR process run its course? It did. So then what does it mean to be a backstop to arbitration? I'm not sure I've heard that phrase. So once you're sent to arbitration, it's the arbitrator's job to finally decide the case, no? I think that that is true in many circumstances. I believe that the phrase backstop to arbitration appears in Freeman. The issue that we had that might have required the intervention of the district court was we actually had some difficulties identifying the procedure for picking the arbitrator. And so that would be an example of something that you can't have an arbitrator to resolve because, in fact, you don't have an arbitrator. So it's your theory of the case, then, that a district judge who, I know you don't agree with this, but assume for a minute that the district judge wrongly refers a party to arbitration. District judge orders a party to arbitrate who never consented to arbitrate. It's your position that that party that never consented to arbitrate can be sent to arbitration, have an award entered against it, and this court lacks jurisdiction. I believe that's the import of the federal arbitration. The import, then, is even more than just that. They're not going to have an opportunity ever to appeal the determination as to arbitrability, will they? Your Honor, my understanding of the scheme that Judge Hardiman laid out is that that is how it works under the Federal Arbitration Act. I guess your answer to my question is you're right. I think that's right. I also want to point out, before moving on to the substance here, that this court in PennWest Associates v. Cohen pointed out that an administrative closing doesn't solve the case. You need, under Federal Rule 58, a separate order, a separate judgment, and that didn't happen here. It's also worth pointing out that the company could have sought a final order from the judge or asked the district court to certify an appeal as is contemplated in the Federal Arbitration Act. Assuming for a minute we have jurisdiction, can you just explain, I can't recall a case like this where a party filed a federal court action and then went to the judge and said, send us to arbitration. Is there some, is that typical here? So, Your Honor, a lot of my practice involves employer refusals to arbitrate under arbitration agreements, and so I'm routinely in district court filing actions under 301 seeking to compel arbitration. After, without a demand for arbitration having made, or was the demand for arbitration previously made here? Oh, no, there was certainly a demand for arbitration made here. There was a grievance filed. That grievance was filed by a union employee, an employee under the, you know, working in the collective bargaining agreement who was also a union officer. That grievance alleged a violation of CBA Section 19. Okay, so then that brings us within to the merits, I think, which is then, are these folks, Mr. Cupp et al., the putative class, are they employees under the CBA? Right. I don't think that that is the issue here. The issue is whether, so the arbitration language, and I'll just read it. It is the issue if the CBA applies only to employees. I think that's right. Even if you say it applies, even if they're not employees, it applies to them as retirees. So, if I could just read the arbitration language. It says, should differences arise between the company and the union or its members as to interpretation or application of or compliance with the provisions of this agreement, then we'll have this grievance and arbitration language. So the union, which certainly has an interest in holding the company to its bargained promises, and I should note that the union alleged in its complaint, and the company never brought forth facts to dispute, that the MOA is a final and binding agreement with respect to the benefits promises set forth therein, benefits promises which relate to key benefits issues that appear nowhere in the CBA other than that listing of benefit plans in Section 19. Are retirees members? Are retirees members? No, they're not. But the union has the ability to bring a grievance. And the first step in the grievance procedure is an employee fills out a grievance form, has a conversation with his or her supervisor. That happened here. There's been no allegation that it didn't. If there were such an allegation, that would be an issue of procedural arbitrability, which the Supreme Court has said time and time again is an issue for resolution by the arbitrator. And just as retirees are not members, retirees are not employees either, correct? That's correct. I mean, absolutely. Doesn't the arbitration procedure, that four-step process that I referred to a few minutes ago, explicitly state that it must be commenced by an employee? Yes, Your Honor, and that's what occurred here. An employee filed a grievance on behalf of the union. Who filed the grievance? I don't have the gentleman's name in front of me, but it appears on the grievance which is attached to the complaint. So the person that filed the complaint was an employee, was not a retiree? Yes, Your Honor. So he was doing it on behalf of retirees? He was doing it on behalf of the union, which has an interest in enforcing the promises that the employer makes. Otherwise, what do we collect a bargaining for? So what is this memorandum of agreement? Is it a contract? Absolutely, Your Honor. As a practical matter, it is a document that is prepared at the close of negotiations. The CBA hasn't been printed yet. So this was dated about three days before the CBA was printed? Well, it's dated about three days before the CBA is effective, the actual printed copy of the CBA much later. And it's prepared by the company, and it's the document that is circulated to the members at the ratification meeting and voted upon. So this memorandum of agreement was circulated and voted upon? Yes, that's true. Why in the world would it not have been explicitly incorporated in some way into the CBA? If it was an important enough matter to include in this separate agreement and the CBA is the only document that explicitly sets out the grievance or the arbitration process, why in the course of negotiations and in the ultimate product, would there not be a tying together somehow of the two that we could get a handle on here? Your Honor, I certainly would not have designed it this way if I were designing it from scratch. But what has happened is over the course of decades, as elucidated somewhat in our complaint, is this has been the process. There's been this other plans language that references plans that are provided by the employer in the CBA, in the 2015 CBA in Section 19, and then the substance of the deal about the benefits matters referred to in Section 19 are in the MOA. Right, but parts of that deal were incorporated into the CBA and others weren't, right? That's certainly true. So, I mean, it's really a high mountain to climb, isn't it, to say that we recognize some things in the memorandum were incorporated in the CBA, but trust us. Other things that weren't incorporated should be there too. How do we do that? Well, Your Honor, I think the key issue here is this is a fight over the meaning of Section 19, a part of the CBA. This dispute requires interpreting Section 19. All right, and how does that language, I think you're right, how does that language help you? What's the language say and why does it cause you to prevail? Well, it certainly helps us get to arbitration because it's a part of the agreement. What's the language say? The language says the employees covered by this agreement are also covered by the following plans. Medical insurance. Employees, and who are the employees? How do we know that these retirees are employees? Well, they sound like former employees, but maybe if they're defined, employees could be defined in myriad ways. In fact, aren't the two terms and concepts so considerably different that there ought to be some explicit language in the contractual document that states why retirees are some kind of subset or analog to an employee? Well, Your Honor, I think that this gets back to the merits of the question is whether this is meant to include retirees. Mr. Kilbert, here's what's troubling me. And I probably in my very first question to Mr. Blumenthal made clear for what little it's worth, it sure looks to me like the retirees were not handled very fairly here, but that's not what this panel is charged with doing. We're charged with figuring out what several contractual documents mean and whether or not as retirees they are included for arbitration purposes. And we also heard Mr. Blumenthal refer to the back and forth, which we all have to acknowledge, of the negotiation process. And you have agreed with me that the CBA is not as clear as it should be by suggesting that, you know, it's not the way you would have written it. Please understand that when I say this, I'm not suggesting that this occurred. And I'm not even using it for purposes of a pejorative, but simply to suggest or to ask you to tell me why I'm wrong. That why this panel couldn't conclude that in the negotiation process, the give and take that's involved in that, the union was just eventually willing to, again, I don't mean to be pejorative, throw the retirees under the bus. It was just part of the process. This absolutely was not a case of the retirees being thrown under the bus. There appear to have been no, you know, there's nothing in the record to suggest that. What's in the record to suggest it is that the retirees were not included within the definition of employees. What I'm hearing from you in your brief and in argument is two possible things that might support you. One is we've always done it this way. This is the way these things work. Don't pay too much attention to the fact that we incorporated some things into the CBA and the other things we wanted to incorporate we didn't. Scrivener's error? I don't know. Or maybe the other thing you're arguing is it just can't be the case that these folks would not have a remedy and it's fairly alarming to hear Mr. Blumenfeld say, yeah, they're out in the cold. I'm about to run out of time, Your Honor. Judge Restrepo has a question after you answer this. All right. Thank you. So the test that has been referred to in some of the briefings related to side agreements, the scope test, the collateral test, those look at side agreements as a whole and not, they don't dissect the side agreements. So to the extent that the MOA, the memorandum of agreement, is a side agreement, all disputes related to the MOA should be arbitrable. It doesn't make sense to pick apart the. . . All right. But then the CBA would have a provision because, and I'm sorry to jump, Judge Restrepo has a question, but you said the MOA is finished first, then the CBA is finished, right? That's correct. Okay. So it's remarkably easy for the lawyers drafting the CBA to say every dispute that may arise under the memorandum of agreement shall be arbitrated. All I can say to that, Your Honor, is it's absolutely true that that would have been easy. The law of the shock, as we look at the 1993 arbitration involving the same plan language, an arbitrator 20 years ago said that you can use this other plan's language to look at MOAs, to look at agreements that were reached at negotiations and embodied in benefit brochures that don't appear in the CBA. So I would respectfully submit that the parties. . . So it's a course of dealing. Absolutely. Exceptions sort of thing. Okay. I guess my concern, again, circles back to the fact that the language about the current retirees in the MOA is nowhere to be found in the CBA. And is it your argument that in years gone by, this is the way we did business, that everything in the MOAs were incorporated by course of conduct in the collective bargaining agreement? That is absolutely part of our argument. And we had a large number of allegations detailing that in the complaint. You know, I wish that this were a cleaner set of circumstances. I'm sure we would not have reached this juncture if it had been. That's my answer. And I appreciate your time today, Your Honor. Thank you. Thank you very much, Mr. Gilbert. Mr. Blumenfeld. Thank you, Your Honors. Just a couple of points. The first, just a point of clarification or error on my part, the tentative agreement language, that word, doesn't appear in the title of it. It appears in the first sentence. The first line, right? Yes. The following sets forth the terms of the tentative agreement. Because I misspoke, I wanted to clarify that. I think you hit the nail on the head, Your Honors, when you were talking about Section 19, which talks about the employees are covered by certain plans and medical insurance. I already said the medical insurance plan is not the plan that is at issue in this case. It's not the plan that these retirees are in. It's not the plan that these retirees are seeking. It's completely different. But to your question, Judge Hardiman, the term employee is defined in this collective bargaining agreement. It's at Joint Appendix, page 205. And it covers all people who are employed at the plant as of the date of this agreement and thereafter. It does not include these people who retired before the effective date of this collective bargaining agreement. So what do you make of counsel's argument under the grievances section that a member of the union, as it were, is bringing the claim on behalf of the retirees? And that would be absorbed in the grievance procedure. So what I would say, Your Honor, is if they intended for grievances to be brought on behalf of retirees, they would have included retirees in that as well. But regardless of whether an employee who also is a member of the union could file a grievance about something that doesn't actually impact that employee at all but affects others, that's just one indication of the fact that retirees weren't meant to be covered. The better indication is the definition of employee that I pointed to earlier, which says that these retirees don't meet the definition of employee for purposes of the Section 19 provision about who's entitled to medical benefits and who isn't. I would also point out, Your Honors, there are plenty of memorandum of agreements that are incorporated explicitly into the collective bargaining agreement that are attached to the back of it as part of that document. This wasn't done that way. So there were two ways. What about the course of dealing? Why shouldn't we put heavy weight on Mr. Kilvert's argument that since 1993, there's been reliance here? The reliance interests seem very strong. I don't think – well, first, there's no evidence or allegation of reliance. What there is is that the parties did agree in 1993 – actually, not these parties, it was a different local union – agreed to arbitrate a different dispute. And what I would say, Your Honors, is just – Was it 93 or 98? I believe it was 1993 that the arbitration occurred. There were other grievances that were filed. And look, there are certainly occasions in which parties might agree to arbitrate a dispute, even if it's not required under the terms of their contract. Certainly, the Federal Arbitration Act would encourage parties to arbitrate disputes that they agreed to arbitrate, even if they're not required under the terms of some preexisting contract. But that can't mean that a court can then compel arbitration of some other dispute that is not arbitrable under the express terms of the contract that the parties agreed to. Mr. Blumenfeld, do you know or are you able to approximate the number of current retirees, as that term would be understood in this setting, who have had their expectations as to the receipt of medical insurance upset?  Yes. My understanding is that it's about 42 or so individuals. We thank both of counsel, all of counsel, for their helpful arguments. And what is a very troublesome case for a number of reasons. We'll take the matter under advisement and ask the clerk to adjourn the proceedings. Thank you very much, Your Honors. Thank you, Your Honors.